Ian D. Quinn (#024515)
Quinn Law PLLC
40 North Central Avenue, Suite 1400
Phoenix, Arizona 85004
Tel. 602.535.0002
Fax 602.535.0003
iquinn@quinnlawnet.com

# UNITED STATES DISTRICT COURT
# DISTRICT OF ARIZONA

| | |
|---|---|
| CORNUCOPIA PRODUCTS, LLC., an Arizona corporation d/b/a Cornucopia Fans, <br><br> Plaintiff, <br><br> vs. <br><br> BED, BATH & BEYOND, INC., a New York corporation, <br><br> Defendant. | Case No.: <br><br> COMPLAINT |

Plaintiff Cornucopia Products, LLC. ("Plaintiff") by and through its undersigned counsel, hereby alleges and states for its Complaint:

## PARTIES AND JURISDICTION

1. Plaintiff Cornucopia Products, LLC. is an Arizona corporation licensed to do business and doing business in Arizona.

2. Defendant Bed Bath & Beyond, Inc. ("Defendant") is a New York corporation authorized to do business and doing business in Arizona.

3. This Court has jurisdiction of this action pursuant to 28 U.S.C. 1332, which states that the District Courts shall have jurisdiction of all civil actions where the amount in controversy exceeds $75,000.00 and is between citizens of different states and foreign states.

4. Venue is proper because Plaintiff is an Arizona limited liability company.

## GENERAL ALLEGATIONS

5. Plaintiff restates all prior allegations herein as if rewritten in their entirety.

6. Plaintiff invents and manufactures, among other items, towel warmers and contracted with Defendant for the distribution of the same in its retails stores.

7. Prior to and during the invention and prototype process Plaintiff developed certain valuable trade secrets used in producing the towel warmer products exclusively for Defendant.

8. The retail market for Plaintiff's product occurs principally between November and January.

9. To plan for the product's busy winter season Defendant would work with Plaintiff in the spring to determine a quantity they would purchase.

10. Plaintiff would then work with its factory in China to ensure that the product would be ready to ship by the end of July.

11. Cornucopia consistently earned profits of $80,000 to $120,000 on towel warmers each winter season.

12. In Spring of 2013 Plaintiff contacted Elizabeth Schmierer, an assistant buyer, in the normal planning conversations for the approaching season.

13. Instead of the typical conversations regarding quantity purchasing and logistics, Schmierer informed Plaintiff that Defendant wanted to work with Conair going forward.

14. Instead of simply engaging Conair and supplying them with the specifications for the towel warmers Defendant forced Plaintiff into giving up its trade secrets to without direct compensation.

15. A buyer, merchandise manager, and the General Merchandise Manager for Defendant all confirmed that Plaintiff had no choice but to provide the trade secrets for the towel

warmer business to Conair, have them manufacture the same piece as Plaintiff did for the prior season, and to instead negotiate with Conair.

16. Defendant knew that Plaintiff hoped to sell other products to the company and BBB's actions amounted to a constructive threat to never work with Cornucopia again on those products unless it capitulated on the towel warmer business.

17. Plaintiff ultimately provided Conair the information as demanded by Defendant.

18. Plaintiff quickly heard from his contact at the factory as she was wary with working Conair after a long, successful run with Plaintiff.

19. Conair indeed bungled several aspects of the relationship and demanded an additional price reduction from what Plaintiff had already extracted from the tight running operation.

20. This experience soured the Factory on Plaintiff, who relied on the factory to produce other present and future products.

21. Even after all of these issues Plaintiff had yet to be compensated for his sample prototypes which were never returned.

22. In early 2014 Plaintiff spent considerable effort either trying to win back the business or get fairly compensated for its value.

23. Plaintiff sent several emails to BBB staff and even traveled to Defendant's New Jersey headquarters for an intense meeting to attempt to re-negotiate Defendant's stance.

24. In the end, Conair eventually sent Plaintiff $60,000 for the entire prototype, far less than what Plaintiff earns in a single season.

## COUNT ONE: MISAPPROPRIATION OF TRADE SECRETS

25. Plaintiff restates all prior allegations as if rewritten here in their entirety.

26. Plaintiff was the original creator and owner of the designs used to produced the towel warmers.

27. Plaintiff derived actual economic value and income as a result of the design and its production.
28. Plaintiff owned a significant competitive advantage as the owner of the designs.
29. Defendant acquired the designs not through a business and contractual negotiation but by strong-arming Plaintiff into selling the design to another company by threatening Plaintiff's future product lines and then never delivered on the promise to produce such lines.
30. Defendant knew that it had facilitated Conair's acquisition of Plaintiff's trade secret through improper means and derived benefit from the deal.
31. Plaintiff has suffered serious monetary damages and lost pending and future business deals as a result of the same.
32. WHEREFORE Plaintiff respectfully requests that this Court enter a judgment against Defendant in an amount to be proven at trial, as well as grant the Plaintiff his attorney's fees and costs, pre and post judgment interest, and any other relief found to be just and proper.

**COUNT TWO: INTERFERENCE WITH A VALID BUSINESS EXPECTANCY**

33. Plaintiff restates all prior allegations as if rewritten here in their entirety.
34. Plaintiff and Defendant had been successfully marketing and producing towel warmers for many years.
35. Defendant was aware of the expectancy to continue to produce the towel warmers for the upcoming winter season.
36. Defendant intentionally interfered with this expectancy by forcing Plaintiff to do business through Conair who damaged the manufacturing from start to finish.
37. Defendant had no reason to force this new condition to the relationship onto Plaintiff as the towel warmers had sold well for several years.

38. Additionally, Defendant damages Plaintiff's relationship with its Chinese manufacturer and spoiled any prospective prototypes Plaintiff had in progress.
39. Plaintiff sustained monetary damages as well as damages to its professional reputation.
40. WHEREFORE Plaintiff respectfully requests that this Court enter a judgment against Defendant in an amount to be proven at trial, as well as grant the Plaintiff his attorney's fees and costs, pre and post judgment interest, and any other relief found to be just and proper.

DATED this 28th day of May, 2014.

_____
Quinn Law PLLC
Ian D. Quinn
Attorney for Plaintiff

**VERIFICATION**

I hereby affirm that the facts alleged in this Complaint are true and correct to the best of my knowledge.

Dated this 27 day of May, 2014.

John Schwartz

Principal of Cornucopia Fans, Inc.

*[signature]*
President